Thank you, your honors, and thank you for everyone who's attending here. Thanks to opposing counsel. My name is Roger Roots. I represent Mr. Rudy Butch Stanko of Gordon, Nebraska. And Mr. Stanko in January 2017 filed a civil rights lawsuit, a constitutional tort claim lawsuit against certain officers of the Oglala Sioux Tribe in Pine Ridge, South Dakota. Essentially, the suit alleged that he'd been driving through the Pine Ridge Indian Reservation on a US highway, was arrested for traffic citations overdue or non-addressed traffic violations, was jailed. He alleged he was beaten or kicked in the leg at least, and was actually ordered to strip naked at gunpoint. And that $700 was stolen from him in that jail. The Oglala Sioux Tribe asserted, and its officers asserted, sovereign immunity and filed a motion to dismiss, which was granted by Judge Viken of the US District of South Dakota. Essentially, the judge ruled that the Oglala Sioux Tribal defendants are immune from civil rights lawsuits of this type. Citing these lots of case law on sovereign immunity, however, those cases don't apply in this type of a situation where here's a non-Indian, Mr. Stanko is a non-Indian. As I read the opinion, he treated the complaint as only a 1983 complaint. Yeah, and that's one of the major problems. Okay, so that, it seems to me then you have to bifurcate your argument. And to the extent you disagree with his 1983 analysis and focus on that, to the extent you think there was error in limiting the complaint to a 1983 claim, focus on that separately. I think that's the way at least I've been thinking about the case. Yes, Mr. Stanko stylized his complaint. Now, he was pro se, unrepresented. He stylized his complaint, which is imperfectly drafted, but he stylized it as a common law and 1983 civil rights complaint. Was there ever any attempt to, once counsel had become involved, to amend the complaint? I don't believe so, no. So what were the common law claims? And also, was there an Indian Civil Rights Act claim? There was not, Mr. Stanko did not have that in there. That being an Indian Civil Rights Act claim. He did not have an Indian Civil Rights Act claim. I just want to make it clear. Again, the term common law is, of course, we're all aware it can be, is a malleable phrase that can encompass many different things. Essentially, he alleged violation of Fourth Amendment rights, assault and battery, and theft. Now, the Indian Civil Rights Act issue is an interesting issue, because it applies in a narrow, it really supports our position. Because it stands for the proposition that governmental authorities on the reservations have to apply, they have to, they are required by the Bill of Rights. By the way, the treaties that these tribes agree to require all government officers to recognize the Bill of Rights and protect all people's liberty. And again, this is a US highway, this is a non-Indian, non-tribal member traveling through the reservation. He's not a resident of the Pine Ridge Reservation, he's a resident of a different state, Nebraska. And the appellee essentially has asserted that the tribe is immune from these lawsuits and that perhaps he should have filed something in the Ogallala Sioux Tribal Court. Well, I just want to say how unworkable that is. The Ogallala Sioux Tribal Court, of course, is a court that has jurisdiction of a general sense over tribal matters within the reservation. But for a non-Indian from a different state traveling through, it's not a workable venue to file any civil rights litigation. Most of us are aware that a non-lawyer can be a lawyer, or can be a tribal advocate in these tribal courts, and I think that's a good thing. That's just, that's too broad to be specific. As I understand, sort of almost reading between the lines, where, what the, there is, Bivens is a common law, federal question, cause of action. Yes. To enforce US constitutional rights, which do not apply to tribes and members on the reservation. So, ICRA, seems to me, has to be the source of the civil rights you're talking about. Well, I would just say this, the order by Judge Viken dismissing the lawsuit. Well, we're beyond his order. His order talked about 1983, and he's absolutely right about 1983, not providing a source of rights against Native American defendants and tribes. Yeah. Before we get to the exhaustion question, which is unavoidable and difficult, you have to find a source, you have to identify a source of rights. Well, what's important? It doesn't have to be a claim under ICRA, but I don't see any source of civil rights, as you're using the word, other than ICRA, that would apply to this on-reservation situation. What's important is that these are governmental actors. These are not just people. These are not. It's important, and it's, we have to find federal question jurisdiction. Correct. There has to be a federal source of what you're saying the civil rights that were violated were. If there isn't one, obviously, then the tribal court is his only remedial venue. You have to identify a federal source of the civil rights being asserted that would provide federal question jurisdiction in the district court, and then we get to the exhaustion question that has bedeviled us in the case of Duncan Energy. I don't know if you're familiar with that old case. I mean, but that's the end of the road for me, it seems. Well, I think the Bivens case is very apropos. It's very appropriate to look at because. But not its holding. Well, its holding applies to federal officers. Now, these tribal officers are not federal officers in the perfect sense. However, they are governmental officers within jurisdictions within the United States. They're not governmental officers of a state. Correct. Or federal. Well, they're not federal in, I guess, every sense of that phrase. In any sense. Well, any governmental entity, you cannot operate a facility, you cannot operate a jail within any jurisdiction in the United States where you're beating people, raping people, whatever. You are a governmental entity, and you certainly are not a state officer, but I think the treaties more or less. But there again, what's your federal legal source for that broad assertion? If tribal law, as I hope it does, would prohibit that kind of conduct, then that's the source of the right that's being violated. But if tribal law is unable, unwilling to adopt and enforce that standard, what higher power, so to speak, forces them to do so? Well- And what judicial authority exists to enforce that? I would say certainly it is an unworkable idea for a non-Indian to be required to go into a tribal court. And by the, I'll just say the Ogallala Sioux Tribal Court is probably the best developed in terms of its legal system and structure of any tribal court in the United States. But it's an unworkable- I did it in Duncan Energy. My concurring opinion pointed out that it did seem rather unworkable. But unless you can provide a foundation to ignore the Supreme Court's instruction that we protect tribal court jurisdiction, then it's exclusive. You need to establish not only a federal claim but a claim so powerful that tribal court jurisdiction is not going to be exclusive. There are so many provisions of constitutional law that I think would actually just overturn. Imagine if Stanko had filed his lawsuit in tribal court, had gone before a jury of Indians. I think that if he objected to that, he could overturn any judgment that would arise from that on appeal in the federal court system. Wait, wait, wait. You say that we have the ability to collaterally review the merits of a tribal court decision? I express grave doubt about that in Duncan Energy. I don't think the law has changed. Well, it's- I think you're talking about whether the Supreme Court with its I don't think they've totally acknowledged that, or even sort of signed off one way or the other on that. Well, by the way, it's the other side that has used the phrase, the idea of lack of exhaustion of administrative remedies, as if these tribal courts are some kind of administrative remedy or administration. That isn't anything we've raised. Exhaustion is used, as you know, in many contexts, including prison litigation. We talk about exhaustion, a term that arose in the administrative law context, but it's applied elsewhere. Including in tribal court jurisdiction controversy. Yeah. Well, certainly there's no court in any US jurisdiction, I mean in states, federal or otherwise, that can allow someone to be arrested improperly, beaten, raped, robbed, stripped at gunpoint, this would be unheard of if this kind of thing is upheld. And- Wait a minute. They've denied everything. We're just talking about who decides whether those wrongs were committed. Yeah, federal district court is the only workable place for this kind of civil rights litigation. How can you say that? I mean, state courts, we can seize jurisdiction from state courts because- Okay. We don't like the way they're enforcing federal civil rights. Okay. Well, there's my point exactly. The 1983 applies to state, can be litigated in state court or federal court. Here, you're dealing with a non-option. They go to Congress and get them to toughen the ICRA, or codify Bivens, and apply it to Native American governments. Well, of course, Bivens was created not by any kind of statute. Do you want us to invent this notion of a better way? It might be a more perfect- Well, it was done in the Bivens case. I mean, it was done in the Bivens case where- By the Supreme Court. By the Supreme Court. There was a lack of a statutory remedy provided by Congress. And the court stepped in and said, no, the Fourth Amendment actually has to have a remedy. There has to be a place where you can assert violations. They were enforcing a constitution, and you have no constitutional source here. Well- The only source is statutory. And so that means if Congress has inadequately legislated, that's where you- Well, Mr. Stanko's initial complaint did lay out constitutional violations. Well, they don't apply. Yeah, I would like to reserve just, I have one minute and 26, I'd like to reserve a minute after my- These are- Thank you. Thank you, Mr. Riggs. Mr. Gunn. Thank you, Your Honors, and may it please the court. My name is Steve Gunn. I'm special counsel to the Oglala Sioux Tribe. With me today is Mark Van Norman, also special counsel to the Oglala Sioux Tribe. Good morning, Mr. Riggs. Your Honors, the Oglala Sioux Tribe is, as the Supreme Court said in Santa Clara Pueblo, a distinct independent political community retaining its original natural rights in matters of local self-government. The tribe possesses sovereignty over both its members and its territory, as the court said in Marion v. Hickory Apache and U.S. v. Masary. And it has the right to make its own laws and be ruled by them, as the court said in- So Mr. Stanko's status as a non-Indian doesn't matter, is that your argument? The federal courts have fashioned restrictions on tribal powers of self-government as they relate to non-members of the tribe. But this court, those restraints are more strict in the case of criminal jurisdiction. And they allow for more leeway in the case of civil jurisdiction. I would note that in this case, we're dealing with multiple traffic citations, which under Oglala Sioux tribal law are civil infractions. And the process exercised by the court was a civil process, not a criminal process. And this court said in U.S. v. Terry, decided in 2005 that the Oglala Sioux tribe has the inherent authority to maintain public safety and preserve public order on the Pine Ridge Indian Reservation. Including, and I quote, the authority to detain non-Indians whose conduct disturbs the public order on the reservation. This case was decided on a motion to dismiss, and so we're left with the facts as they are in the complaint. But Mr. Stanko himself acknowledges that he was stopped on more than one occasion for speeding. And we do cite that the two speeding instances- That's not what we're talking about. You're arguing as though this is somehow, he's seeking a collateral review of your traffic enforcement. He, of course, is not doing that. He's saying that tribal officers operated in an extremely, in unacceptable. They beat him, they robbed him, etc., etc. All right, so let's, and implicit, of course, is since the allegations include actions taken by a tribal judge, the inference, I can't get a fair trial there. Your Honor. This, you know, there's a long history of the federal government based on constitutional rights being sympathetic with providing a forum for those kinds of claims that will resolve them properly and fairly. And subject to appellate review. Now where will, when and if the tribal court has these claims and either says that's not illegal on our reservation, I can't imagine they'd do that. But we find to the contrary or, you know, there's no source of rights here that you cited. Where's the appeal? Is there any appeal beyond the tribal court? If Mr. Stanko were to bring an Indian Civil Rights Act claim or a common law claim based on the laws of the Oglala Sioux tribe, in tribal court, his appeal would be to the Oglala Sioux tribe Supreme Court. And then? If he asserted that there was a lack of, he would be initiating the claim, so I don't think we're in an exhaustion situation where he would then bring the case to this court to determine whether the tribal court had jurisdiction. The U.S. Supreme Court has never held that it has certiorari jurisdiction to review the final decision of a tribal court. So the tribe's legal position is that there is no federal court, other than the tribal courts, which are indirectly at least creatures of Congress, there is no federal court with jurisdiction to determine whether these alleged federal rights have been violated. Your Honor, with regard to ICRA, the Supreme Court held in Santa Clara Pueblo that And it's so different. I mean, that's where the Indian, non-Indian, Dry Creek Lodge, the Dry Creek Lodge distinction, and of course you can say, well, yeah, there was no functioning tribal court, but I'm not sure that's the end of the inquiry. This court has addressed Dry Creek Lodge and has held that it has restricted its application to cases where there is no functioning tribal court, and that's the Kremple case, Your Honor. And, you know, it's not controlling to me. Pueblo is not controlling to me. Dry Creek Lodge is not controlling. What I would suggest is that The breadth of the assertions by the tribe, when you go beyond the 1983 issues in the briefs, are frankly to me very, very troublesome and disturbing. I think that there is federal court jurisdiction under ICRA for a writ of habeas corpus, and that can be used to challenge confinement. That's not a collateral attack of a civil ruling, rejecting civil claims. That's completely off point. I think Mr. Stanko alleges that he was detained by tribal officials. No, but I'm more concerned about the classic 1983 or Bivens claims of, for lack of a better word, outrageous government conduct. What I'll say is this, Your Honor. I know that the case was decided on a motion to dismiss, but I have a duty of candor to the court, as does opposing counsel. The entire proceedings in the tribal correctional facility were recorded with video and audio recording, and they do not bear out the allegations that are in the complaint in any fashion. Those facts are untested and unproved, and I know that the district court had to take them as true, but the defendants categorically deny, in every way, that any of these events occurred. And this is not the first... I think the district court erred in construing this complaint as strictly a 1983 case. And then, when I go from there, it gets real difficult. You know, Your Honor, Mr. Stanko proceeded pro se, and the court gave latitude in construing his pleading. The pleading raises a 1983 claim and unspecified claims under the common law. I would note that Mr. Stanko is unlike... I have much trouble when taking the reasoning of Bivens. Of course it's a common... Bivens is a federal common law action to enforce the U.S. Constitution, which doesn't directly apply to... So it's not controlling it. Right. That's Talton v. Mays. No, but ICRA is a source of federal rights. That's correct, and Mr. Stanko... It's a common law claim to enforce those rights. There's 1331 federal question jurisdiction to me. That's undeniable. I think that was squarely addressed by the Supreme Court in Santa Clara Pueblo, where the court found no implied federal right of action to enforce other than the writ of habeas corpus, which was the remedy granted. And I don't think Dry Creek Lodge or the rationale gets us around Santa Clara Pueblo, or the fact that Mr. Stanko is a non-Indian. Wait a minute. You just said they recognized it's a federal cause of action. Now, an ICRA cause of action they thought was limited within the statute, but they also recognized that Congress was adapting and applying the Bill of Rights to the reservations. I think that the court has never held that the U.S. Constitution applies to Indian tribes. But let's call them quasi-constitutional rights. Well, it's a statute. It's reflected as enacted by Congress. Now, why isn't that a legitimate source of a federal common law cause of action? Well, the Supreme Court, I think, Your Honor... They haven't said it. Yeah, right. I think they addressed it in Santa Clara, where they said... Because they were dealing with an entirely internal dispute among members of a tribe and the tribal authority. This couldn't be further from that. This is a non-Indian venturing on the reservation who allegedly then is raped, beaten, and robbed. What I would say... It goes without saying that those allegations would violate more than one provision in the Bill of Rights if done by a federal or state officer. To be clear, those actions, if they were true, they would violate the Indian Civil Rights Act, and they would also violate the Oglala Sioux Tribal Constitution, which incorporates many of the same provisions in the Bill of Rights. They would also violate the laws of the Oglala Sioux Tribe. Mr. Stanko would have had his choice to bring a 1983 claim in state court or in federal court. That's correct. I guess if they were federal officers, I suspect state courts will enforce Bivens as well. They may. So the question is, if there's a true federal source of the rights being claimed, why isn't there a federal court alternative venue to consider them? Indian tribes are not under the United States Constitution. They are distinct, separate political entities. They have treaties with the United States. The Oglala Sioux Tribe entered the Treaty of 1851 and the Treaty of 1868. Those treaties guarantee tribal self-government. The United States pledged to protect the self-government. I don't suspect they address whether tribal court jurisdiction is exclusive. In exercising their powers of self-government, the court in Williams v. Lee, a case involving a non-Indian, ordered that absent a congressional statute authorizing a different court to have jurisdiction, the jurisdiction of the tribal court is exclusive, and that's Williams v. Lee. This court has, in cases involving common law claims, refused to find federal jurisdiction in cases arising both under contract and property law, and some cases involving non-Indians. So those claims can be litigated in the tribal court. And I would also note, in order for the court to reach the question of whether there is an implied federal common law right of action that arises out of ICRA or the spirit of ICRA, the court would have to reconstrue Mr. Stanko's complaint. His complaint pleads a Section 1983 violation and unspecified common law cause of action. It's a ten-count complaint, and every count of the complaint references a right under the United States Constitution, save one count which references these rights, and I think that references the rights referred to in the other nine counts. So Mr. Stanko was pro se when he filed his complaint, but these issues were raised and they were litigated on a motion to dismiss. He didn't seek leave to amend his complaint, and he hasn't done so since he retained counsel. Mr. Stanko is not a stranger to the federal courts. A simple PACER, National Case Locator record search, reveals over a hundred cases in the district and federal courts and appellate courts in which Mr. Stanko has litigated his rights. A Westlaw search for Rudy Stanko reveals over 100 published decisions in which Mr. Stanko was a litigant. So I understand the deference, but his case does not raise an ICRA claim. Your Honors asked Mr. Roots, is there an ICRA claim? He said, no, there's no ICRA claim. And so I think that when we look at the 1983 cause of action, it's clear that for two reasons it was properly dismissed. One, the U.S. Constitution does not restrain the powers of Indian tribal governments. And two, Section 1983 applies to persons acting under color of the law of a state, and the Oglala Sioux Tribe simply isn't a state. There were a number of different claims that Mr. Stanko brought, and we divided them into four categories. The claims against the Oglala Sioux Tribe, of course, are barred by sovereign immunity, and even the Supreme Court in Santa Clara Pueblo held that tribes may not be sued under the ICRA. We're only talking about the individual capacity? Yes, I think that's right. And as far as the individual suit and official capacity, the court is well aware that that's treated as a suit against the government. So we're left with the individual capacity claims against the officers, which are either 1983 claims or so-called common law claims. The 1983 claims fail. And as I said, the common law claims are unspecified, and they also would fail. We would suggest if they are common law tort claims, they arise under tribal law, and the court would have no supplemental jurisdiction in the absence of a federal law question. Thank you, Mr. Gunn. Mr. Roots, your rebuttal. Thank you, Mr. Gunn. This ICRA, the idea of the Indian Civil Rights Act, it's being thrown out a lot today at this moment here. It was not even mentioned. Mr. Stanko was given no direction to pursue under ICRA in the court below. It's not the court's responsibility to give a litigant direction. Especially someone who's been in 100 cases. Well, Mr. Stanko is a frequent pro se litigator, of course. Well, the point is, I think in the big picture, this is a little bit of a red herring. For a non-Indian, this ICRA act and the idea that you go to tribal court- really, we're a non-Indian. Of course, ICRA and the tribal courts have their own general jurisdiction over tribal matters. When I travel to South Dakota and I have an automobile accident, and I have a common law tort claim against the other driver, of course I have to be able to bring it in Minnesota, because I'm a Minnesotan. No, South Dakota may be the only place the suit can be brought. Well, for a non-Indian- It's very easy to get kind of sloppy on these issues. Mr. Stanko might have some experience in courts, but to expect that he has experience in tribal court would be beyond the pale, even for someone with experience otherwise. Aren't you really saying that the ICRA is a red herring because there's no ICRA claim brought? There's no ICRA claim brought, but it wasn't even brought up in any of the proceedings below. Anyway, I would respectfully request the court to reverse the district court's order. Thank you so much. Thank you, Mr. Roots. Thank you also, Mr. Gunn. The court appreciates the argument the counsel has provided to us this morning. Very interesting issues of jurisdiction, and we will take the case under advisement and render decision in due course. Thank you. You may be excused.